PanWest NCA2 Holdings LLC v Rockland NCA2 Holdings, LLC (2025 NY Slip Op 03633)

PanWest NCA2 Holdings LLC v Rockland NCA2 Holdings, LLC

2025 NY Slip Op 03633

Decided on June 12, 2025

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 12, 2025

Before: Kern, J.P., Kennedy, Friedman, Shulman, O'Neill Levy, JJ. 

Index No. 653890/20|Appeal No. 4586|Case No. 2023-04703|

[*1]PanWest NCA2 Holdings LLC, Plaintiff-Respondent-Appellant,
v
Rockland NCA2 Holdings, LLC, Defendant-Appellant-Respondent.

Kent, Beatty & Gordon, LLP, New York (Joshua B. Katz of counsel), for appellant-respondent.
Foley & Lardner LLP, New York (Quinn N. D'Isa of counsel), for respondent-appellant.

Order, Supreme Court, New York County (Andrew Borrok, J.), entered August 22, 2023, which, insofar as appealed from as limited by the briefs, granted plaintiff's motion for summary judgment in full with respect to its Non-Annual Maintenance claim and in part with respect to its pond remediation claim "to the extent that the Defendant did not maintain two feet of freeboard in accordance with the requirements set forth in the permit for the pond," and denied defendant's motion for summary judgment dismissing the Non-Annual Maintenance claim to the extent it sought to recover damages for Non-Annual Maintenance costs, unanimously modified, on the law, to grant plaintiff's motion with respect to liability on the pond remediation claims and the matter remanded for a determination of damages on that claim and on the Non-Annual Maintenance claim, and otherwise affirmed, without costs.
The motion court properly granted plaintiff summary judgment on liability on the Non-Annual Maintenance (NAM) claim. It is clear as a matter of law that, by failing to disclose NAM costs to plaintiff, notwithstanding plaintiff's repeated requests for budget information and specific questions about such costs, defendant breached its obligation under § 6.2(a) of the operative Membership Interest Purchase Agreement (MIPA) to "afford. . .reasonable access, during normal business hours, to the properties . . . , books, contracts and records of the Acquired Companies with respect to the Business. . . , and to the appropriate officers and employees of the Acquired Companies. . . as reasonably requested by Buyer and as may be necessary to assist Buyer in connection with Buyer's understanding of the Business and integrating the Business into Buyer's organization following the Closing."
In view of the forgoing, we need not reach the parties' arguments with respect to MIPA § 6.1(l). However, issues of fact exist with respect to the amount of damages for the NAM claim. Contrary to defendant's argument, it is not clear as a matter of law that expenditures for NAM costs are not properly recoverable. It is true that plaintiff did not receive the subject inaccurate budget until after it had already signed the MIPA. However, § 8.2(d) of the MIPA allowed plaintiff to refuse to close if defendant failed to "perform[] or compl[y], in all material respects, with all of the covenants and agreements required by this Agreement to be performed or complied with by Seller at or before the Closing." A factfinder could reasonably conclude that, but-for the breach, plaintiff would have sought and defendant would have agreed to some price reduction, although it is not clear that it would have been for the full amount of the NAM costs. It is also not clear as a matter of law that the failure to disclose the NAM costs was not "material."
The motion court should also have granted plaintiff summary judgment on liability on the pond remediation claim because it is clear as a matter of law that defendant [*2]breached MIPA § 4.12(a)(i) by falsely representing and warranting that the subject facility was "in compliance in all material respects . . . with the terms and conditions of any Permits required under applicable Environmental Laws to own and operate the Business." The operative groundwater discharge permit expressly requires that the pond maintain "[a] minimum of 2-feet of freeboard . . . in all reservoirs at alltimes." It is not clear that the 1993 letter authorizing a one-foot freeboard "when there have been significant storm events" is still in effect but, even if it is, there is no evidence that all of the freeboard exceedances fit these criteria. Defendant's representatives admitted that the two-foot freeboard condition was not always met, actively sought guidance and quotes to remediate this issue, and agreed with a recommendation to report this issue to its regulator, although it never actually did so. Even if plaintiff was able to (mostly) maintain the freeboard level through constant drainage, this would not be sufficient to create an issue of fact with respect to permit compliance, as this is a stopgap measure, not a long-term solution.
The repair estimates obtained by both parties demonstrate that the permit noncompliance was material. It does not matter that plaintiff has only incurred $105,123.05 in pond remediation costs so far, as work is ongoing. The fact that issues of fact exist with respect to the amount of damages does not preclude an award of summary judgment on liability (see Dee Cee Assoc. LLC v 44 Beehan Corp. 148 AD3d 636, 642 [1st Dept 2017]).
It is also clear as a matter of law that defendant breached MIPA § 4.12(b) by failing to provide at least the pond survey to plaintiff prior to closing. This document falls within the category of "final environmental investigations, studies, audits, tests or other reports conducted by or for Seller or any Acquired Company . . . that relate to environmental matters in connection with the Facility" within the meaning of this provision. It is also "material" for the reasons explained above.
THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 12, 2025